**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| OSCAR GARNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:20-cv-01654-SPM |
| ) | |
| DANIEL KEEN, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Oscar Garner for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $10.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss the official capacity claims against all defendants, as well as the individual capacity claims against Daniel Keen, Nurse Unknown Jandi, Nurse Corrine Unknown, Nurse Unknown Cox, Officer John Doe, Nurse Jane Doe #2, Dr. Jane Doe #4, Nurse Jane Doe #5, Nurse Jane Doe #6, and Medical Director Jane Doe #8. However, the Court has determined that the individual capacity claims as to Nurse Megan Unknown, Nurse Deana Unknown, Nurse Jane Doe #1, Nurse Jane Doe #3, and Nurse Jane Doe #7 are sufficient for purposes of initial review.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial

partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his certified account statement. (Docket No. 3). The account statement shows an average monthly deposit of $50.00. The Court will therefore assess an initial partial filing fee of $10.00, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73

(8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently a pretrial detainee at the St. Charles County Department of Corrections in St. Charles, Missouri. He brings this action pursuant to 42 U.S.C. § 1983. His complaint names fifteen separate defendants: (1) Director of Corrections Daniel Keen; (2) Nurse Megan Unknown; (3) Nurse Corrine Unknown; (4) Nurse Deana Unknown; (5) Nurse Unknown Cox; (6) Officer John Doe; (7) Nurse Jane Doe #1; (8) Nurse Jane Doe #2; (9) Nurse Jane Doe #3; (10) Dr. Jane Doe #4;[1] (11) Nurse Jane Doe #5; (12) Nurse Jane Doe #6; (13)

---

[1] In the section of the form complaint to list the defendants, plaintiff states that Jane Doe #4 is a "nurse" at the St. Charles County Jail. (Docket No. 1 at 3). However, in the "Statement of Claim" section, plaintiff repeatedly refers to Jane Doe #4 as a "doctor." (Docket No. 1 at 10). Based on the subsequent allegations, it appears that plaintiff's earlier identification of Jane Doe #4 as a nurse was a mistake.

3

Nurse Jane Doe #7; (14) Medical Director Jane Doe #8; and (15) Nurse Unknown Jandi. (Docket No. 1 at 2-3, 5). Defendants are sued in both their official and individual capacities.

In his "Statement of Claim," plaintiff asserts that he arrived at the St. Charles County Jail late on the afternoon of October 29, 2020. (Docket No. 1 at 5). When he arrived, he spoke with Nurse Jane Doe #1. Plaintiff advised Nurse Jane Doe #1 that his right knee had been swollen for approximately two days. Nurse Jane Doe #1 advised plaintiff that she was going to have him ice his knee for three days, and also give him two restrictions, "one for lower level and the other for lower bunk."

Once plaintiff arrived on the unit, Officer John Doe told him that he was going to the "top tier," which was on the second floor. (Docket No. 1 at 6). Officer John Doe also advised plaintiff that he would get a lower bunk. Plaintiff "explained" to Officer John Doe that Nurse Jane Doe #1 had given him a restriction for a lower level because of a medical issue. Officer John Doe replied "that the nurse should not have given him a lower level restriction," and that he needed to go to the second floor and lockdown. Plaintiff asserts that Officer John Doe "just disregarded [his] medical restrictions." Based on the facts presented by plaintiff, however, it appears that Officer John Doe sent him to the second floor because of housing restrictions and quarantine measures necessitated by COVID-19.

Due to the injury to his knee, the inmate in the cell next to plaintiff would bring plaintiff's meals up the stairs so that he "would not have to attempt to walk down the stairs." Plaintiff states that the guards would sometimes bring the trays to him as well.

On November 9, 2020, plaintiff states that he was still in pain. Nurse Jessica came to his unit, and plaintiff told her that his knee was swollen and that he "was being force[d] to have to walk up and down the stairs," and that he had hit his knee on the railing. According to plaintiff,

4

Nurse Jessica "could see his knee was still swollen," and advised him that "she would go back and speak with the head nurse and check into this matter." (Docket No. 1 at 7).

Plaintiff asserts that at the time he spoke with Nurse Jessica, he still had both restrictions in his file. Shortly after Nurse Jessica left, however, she sent plaintiff an email. In the email, Nurse Jessica explained that plaintiff had a bottom bunk restriction, but "due to housing restrictions" in the jail, he could not be placed in the bottom tier. After receiving the email, plaintiff spoke to "the office worker in the bubble," who told him that Nurse Jane Doe #2 had come into the bubble and taken plaintiff's lower level restriction.

Despite accusing Nurse Jane Doe #2 of taking his lower level restriction, plaintiff also alleges that Nurse Unknown Jandi took the restriction out of his file at "11:47:45 AM." (Docket No. 1 at 8). Apparently, Nurse Unknown Jandi wrote to plaintiff, telling him that the restriction had been removed because housing was at capacity. Nurse Unknown Jandi also encouraged him to submit a medical request to have his knee reassessed, so that the doctor could be contacted for an anti-inflammatory prescription.

Dissatisfied with this response, plaintiff sent another message to medical asking whether he had a lower level restriction. Nurse Deana Unknown responded at 2:45 p.m. on November 9, again informing plaintiff that he had been cleared from a lower level restriction.

On November 11, 2020, plaintiff wrote to medical saying that he could not elevate his leg because he had not been given an extra pillow. (Docket No. 1 at 12). Nurse Corrine wrote him back to advise him that he could use a rolled-up towel or blanket for elevation. She also advised him that nothing else was approved at that time.

On November 12, 2020, Nurse Jessica came to plaintiff's cell to examine his knee. (Docket No. 1 at 8). She noted swelling and limited mobility, and placed him on the list to see the doctor.

Nurse Jessica also gave him an Ace wrap and Tylenol for thirty days. Plaintiff claims that Nurse Jessica advised him that she would place the lower level restriction back in his file.

Plaintiff states that he does not know if he is currently on any restrictions, because he is not allowed to see his medical file. (Docket No. 1 at 9). However, he "was told by medical that he has a restriction in his file saying the medical staff must bring his meds to his cell due to his swollen knee." (Docket No. 1 at 10).

On November 13, 2020, during the night med pass, plaintiff was in pain from his swollen knee and could not walk down the stairs. (Docket No. 1 at 8). He asked Nurse Jane Doe #3 if she could bring him his medication. (Docket No. 1 at 8-9). Nurse Jane Doe #3 allegedly replied by telling plaintiff that he "shouldn't have come to jail." (Docket No. 1 at 9). She also determined that plaintiff's request amounted to "a refusal."

On November 14, 2020, during morning med pass, plaintiff asked Nurse Megan if his medications could be brought to him due to his knee pain. Nurse Megan "stated that's a refusal and denied [plaintiff] his meds." That night, Nurse Deana told plaintiff that they were not his maids, and that if he wanted his meds, he had to come down the stairs to get them. Nurse Deana then denied plaintiff his meds because plaintiff was not able to get down the stairs. On November 17, 2020, Nurse Deana again denied him his meds, "saying she is not [plaintiff's] maid [and] if he wants his meds he better get up and come down the stairs and get them." (Docket No. 1 at 10).

Plaintiff notes that Dr. Jane Doe #4 will not see him until the unit is clear from quarantine. Nonetheless, Dr. Jane Doe #4 has prescribed him Tylenol for his knee. On November 17, 2020, Dr. Jane Doe #4 also prescribed him prednisone. Plaintiff asserts that he was prescribed prednisone without the doctor seeing him, and without explaining how the medication works, or its side

6

effects. That day, Nurse Jane Doe #5 came to his cell at 7 or 8 p.m. to give him six prednisone pills. An hour later, Nurse Jane Doe #6 came back with three prednisone pills.

On November 18, 2020, plaintiff states that he "was forced to come out of his cell and down the stairs" to get his medications, despite his knee pain, and despite the restriction for the nurses to bring his meds to him. He further alleges that Nurse Jane Doe #7 told him that if he wanted his meds, he had to come get them.

Plaintiff asserts that he is in "constant pain" due to his swollen knee, and that because of his knee, he has not been able to shower since October 29, 2020. He claims that he "is being denied his pain medication due to not being able to come down the stairs." As a result, plaintiff seeks an order directing the jail to follow his restrictions, and to provide him with a handicap shower cell. (Docket No. 1 at 11). He also requests punitive, compensatory, and nominal damages.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs. Because plaintiff is proceeding in forma pauperis, the Court reviewed his complaint pursuant to 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss the official capacity claims against all the defendants, as well as the individual capacity claims against Daniel Keen, Nurse Unknown Jandi, Nurse Corrine Unknown, Nurse Unknown Cox, Officer John Doe, Nurse Jane Doe #2, Dr. Jane Doe #4, Nurse Jane Doe #5, Nurse Jane Doe #6, and Medical Director Jane Doe #8. However, the Court has determined that the individual capacity claims as to Nurse Megan Unknown, Nurse Deana Unknown, Nurse Jane Doe #1, Nurse Jane Doe #3, and Nurse Jane Doe #7 are sufficient for purposes of initial review.

7

**A. Official Capacity Claims**

Plaintiff has sued all defendants in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, plaintiff asserts that all fifteen defendants are employed by the St. Charles County Jail. As such, the official capacity claims against them are actually claims against St. Charles County itself, their employer.

A local governing body such as St. Charles County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick*

*v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St. Charles County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

    1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

    2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

>    3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff has not presented any factual allegations supporting the proposition that St. Charles County has an unconstitutional policy or custom, or that it has been deliberately indifferent in failing to train or supervise its employees.

With regard to a policy, plaintiff has not alleged any facts demonstrating that a particular St. Charles County "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body" caused him harm. Certainly, he has not shown

that his issues with the St. Charles County nurses stemmed from "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."

As to custom, plaintiff's facts do not establish the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" St. Charles County employees, much less that St. Charles County policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. Instead of a widespread, persistent pattern, plaintiff's allegations concern only his own experience at the St. Charles County Jail.

Finally, plaintiff has not properly alleged a failure to train on the part of St. Charles County, because his facts do not demonstrate deliberate indifference. Deliberate indifference must be proved by showing that St. Charles County "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Plaintiff presents no facts indicating that St. Charles County had notice that its training procedures were inadequate. Indeed, plaintiff presents no facts establishing that St. Charles County's training procedures were inadequate at all.

For the reasons discussed above, plaintiff has failed to state a municipal liability claim against St. Charles County. As such, the official capacity claims against all defendants must be dismissed.

### B. Individual Capacity Claims

Plaintiff has also sued all defendants in their individual capacities. Liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir.

2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

      i.     **Director of Corrections Keen and Medical Director Jane Doe #8**

Plaintiff has accused both Director of Corrections Keen and Medical Director Jane Doe #8 of failing to train the medical staff at the St. Charles County Jail. Vicarious liability is inapplicable to § 1983 suits. *Marsh*, 902 F.3d at 754. Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution"). To succeed, "[t]he plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts," which "requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). Furthermore, to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury. *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011).

In the complaint, plaintiff asserts that "Daniel Keen an[d] the Medical Director Jane Doe-8 [have] failed to train the medical staff at [the] St. Charles County Jail along [with] security staff,"

12

and "continue to turn a blind eye to the situation." This conclusory statement is the only allegation made against either Director Keen or Medical Director Jane Doe #8. Plaintiff provides no facts supporting his contention that there was a failure to train. In particular, there are no facts establishing the inadequacy of the training, or that Director Keen or Medical Director Jane Doe #8 received notice of such inadequacies. Indeed, there is no indication that Director Keen or Medical Director Jane Doe #8 were personally aware of plaintiff's situation at all, or played any role in it. To state a cause of action, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010). Here, plaintiff has done nothing more than present a legal conclusion. Therefore, the individual capacity claims against Director Keen and Medical Director Jane Doe #8 must be dismissed.

  ii.  **Officer John Doe**

Plaintiff claims that Officer John Doe "disregarded" his medical restriction by placing him on the second floor, rather than the first. Because plaintiff is a pretrial detainee, his claims are governed by the Fourteenth Amendment, rather than the Eighth Amendment. *See Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010) ("The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the Fourteenth Amendment imposes analogous duties on jailers to care for detainees").

In determining whether pretrial detention is unconstitutionally punitive, the United States Court of Appeals for the Eighth Circuit has applied the deliberate indifference standard. *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). *See also Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) ("To succeed on a claim under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee…must show the defendant official was deliberately indifferent to

his rights"). In particular, the Eighth Circuit has explained that this standard is applicable when "the governmental duty to protect at issue…is not based on a pretrial detainee's right to be free from punishment but is grounded in principles of safety and well-being." *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). Deliberate indifference requires a demonstration that the defendant was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

In this case, plaintiff alleges that when he arrived on the unit, Officer John Doe told him he was going to the second floor, but would get a lower bunk. Plaintiff "explained" that he had a restriction for a "lower level because of medical issues." Nevertheless, Officer John Doe told him he had to go to the second floor and "lock down." As plaintiff makes clear, this lockdown was part of the quarantine procedures necessitated by COVID-19. These facts are insufficient to show that Officer John Doe was aware that placing plaintiff on the second floor created a substantial risk of serious harm. For example, plaintiff does not allege that Officer John Doe knew he would not be able to get his medications, or that the nurses would refuse to bring his medications to him. Far from establishing that Officer John Doe knew of a risk, plaintiff's facts do not even make clear that Officer Doe knew what plaintiff's "medical issues" were. Without more, this single interaction, which occurred when plaintiff first reached the jail, is not enough to demonstrate that Officer John Doe violated plaintiff's constitutional rights.

### iii. Nurse Unknown Jandi, Nurse Corrine Unknown, Nurse Unknown Cox, Nurse Jane Doe #2, Dr. Jane Doe #4, Nurse Jane Doe #5, and Nurse Jane Doe #6

Plaintiff has accused Nurse Unknown Jandi, Nurse Corrine Unknown, Nurse Unknown Cox, Nurse Jane Doe #2, Dr. Jane Doe #4, Nurse Jane Doe #5, and Nurse Jane Doe #6 of being deliberately indifferent to his medical needs.

At all relevant times, plaintiff was a pretrial detainee, so his constitutional claims fall under the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). However, the Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Accordingly, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006). *See also Morris*, 954 F.3d at 1058 (stating that a pretrial detainee has the same rights to medical care under the due process clause as an inmate has under the Eighth Amendment).

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

15

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

With regard to Nurse Unknown Jandi, plaintiff states that Jandi took his lower level restriction out of his file, and explained to him that housing was at capacity. She also encouraged him to be reassessed, in order that a nurse could contact the doctor for anti-inflammatory pain medication. Plaintiff appears to suggest that removing his lower level restriction, in and of itself, violated his constitutional rights. However, as plaintiff acknowledges, he was not allowed on the lower level because of quarantine restrictions stemming from COVID-19. Based on these facts, Nurse Jandi's removal of his lower level restriction does not demonstrate an action "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Furthermore, as plaintiff notes, medical placed a restriction into his file for the nurses to deliver his medications to him, meaning that the lower level restriction was not necessary for him to receive treatment. Though he alleges elsewhere that various nurses violated this particular restriction, Nurse Unknown Jandi is not accused of refusing to bring him medication. Therefore, the claim against Nurse Unknown Jandi must be dismissed.

Likewise, plaintiff makes a fleeting reference to Nurse Jane Doe #2 removing his lower level restriction. According to plaintiff, this information came to him via an "office worker in the bubble," who "told [him] that the nurse came in the bubble and took [his] lower level restriction,

16

whoever Jane Doe 2 is." As previously discussed, the removal of plaintiff's lower level restriction, without more, does not demonstrate deliberate indifference to his medical needs. Therefore, the claim against Nurse Jane Doe #2 must be dismissed.

As to Nurse Corrine, plaintiff only mentions her with regard to a message he received on November 11, 2020. Plaintiff states that he had contacted medical at 3:28 p.m. to say that he could not elevate his leg because he had no extra pillow. Nurse Corrine responded at 4:19 p.m. by advising him to elevate the leg by using a rolled-up towel or blanket. She also told him that nothing else was approved for him at that time. These facts do not establish that Nurse Corrine intentionally delayed, denied, or interfered with the treatment of a serious medical need. To the contrary, they show nothing more than a timely response to a medical issue. Therefore, the claim against Nurse Corrine must be dismissed.

With respect to Nurse Unknown Cox, plaintiff does not make any specific allegations. Nurse Cox is listed in the caption as a defendant, with the parenthetical that Cox is "head medical." In the "Statement of Claim," plaintiff mentions Nurse Jessica explaining "that she would go back and speak with the head nurse." To the extent that this is a reference to Nurse Unknown Cox, it is insufficient to state a claim. As noted above, plaintiff must allege a causal connection between the actions of a defendant and the violation of his constitutional rights. He has not done this as it pertains to Nurse Unknown Cox. Therefore, the claim against Nurse Unknown Cox must be dismissed.

With regard to Dr. Jane Doe #4, plaintiff states that Dr. Doe #4 prescribed him Tylenol and prednisone without examining him or explaining the side effects. To the extent that plaintiff is upset that the doctor did not personally see him, the Court notes that he has acknowledged being in COVID-19 quarantine, and that the doctor was not seeing anyone until the unit was clear. As to

treatment, plaintiff presents no facts showing that Dr. Jane Doe #4 intentionally denied or delayed giving him care. Rather, plaintiff's own facts indicate that Dr. Jane Doe #4 prescribed him medications for his swollen knee. As to his assertion that Dr. Jane Doe #4 did not explain what the medications were for, or their side effects, he has not presented any allegations showing that this could not have been done by the nurses, or that he was actually harmed in any way. Therefore, the claim against Dr. Jane Doe #4 must be dismissed.

Finally, as to Nurse Jane Doe #5 and Nurse Jane Doe #6, plaintiff states only that these two nurses both brought him prednisone on the same day, about an hour apart. Plaintiff provides no amplification for this statement, and does not explain why he believes this constitutes deliberate indifference. He appears to imply that having two different nurses bring him two different amounts of prednisone constitutes a mistake. Even assuming that this is what plaintiff intended to allege, medical malpractice or negligence does not constitute deliberate indifference. *See Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (stating that medical malpractice is not actionable under the Eighth Amendment); and *Kulkay*, 847 F.3d at 643 (stating that mere negligence or inadvertence does not rise to the level of deliberate indifference). Therefore, the claims against Nurse Jane Doe # 5 and Nurse Jane Doe #6 must be dismissed.

    **iv.    Nurse Megan Unknown, Nurse Deana Unknown, Nurse Jane Doe #1, Nurse Jane Doe #3, and Nurse Jane Doe #7**

Plaintiff's claims against Nurse Megan Unknown, Nurse Deana Unknown, Nurse Jane Doe #1, Nurse Jane Doe #3, and Nurse Jane Doe #7 are sufficient for purposes of 28 U.S.C. § 1915 review. As already noted, in order to establish deliberate indifference, plaintiff must prove that he suffered from an objectively serious medical need, and that jail officials actually knew of and disregarded that need. *See Roberts*, 917 F.3d at 1042. "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson

would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784. Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn*, 49 F.3d at 1346.

In this case, plaintiff has alleged an injury to his knee that makes it difficult for him to move up and down stairs. This injury has been seen by medical professionals, and a doctor has prescribed him medications. Furthermore, plaintiff has alleged that a medical restriction in his file requires nurses to bring his medications to him on the second floor. Nevertheless, plaintiff has presented facts showing that Nurse Megan Unknown, Nurse Deana Unknown, Nurse Jane Doe #1, Nurse Jane Doe #3, and Nurse Jane Doe #7 have refused to bring him his medications, and that when he has asked them, they have treated his question as a refusal. The Court must accept these facts as true and make all reasonable inferences in favor of the plaintiff. *Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). Therefore, the Court will direct the Clerk of Court to issue process on Nurse Megan Unknown and Nurse Deana Unknown in their individual capacities as to plaintiff's claim of deliberate indifference to his medical needs.

Because plaintiff has not provided the names of Nurse Jane Doe #1, Nurse Jane Doe #3, and Nurse Jane Doe #7, the Court cannot issue process upon them. However, the Court will **not** dismiss these three Doe defendants at this time, as plaintiff's allegations appear sufficient to permit their identification following reasonable discovery. *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $10.00 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the official capacity claims against all defendants are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the individual capacity claims against Daniel Keen, Nurse Unknown Jandi, Nurse Corrine Unknown, Nurse Unknown Cox, Officer John Doe, Nurse Jane Doe #2, Dr. Jane Doe #4, Nurse Jane Doe #5, Nurse Jane Doe #6, and Medical Director Jane Doe #8 are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on Nurse Megan Unknown and Nurse Deana Unknown in their individual capacities as to plaintiff's claim of deliberate indifference to his medical needs.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 22nd day of April, 2021.

                                                HENRY EDWARD AUTREY
                                                UNITED STATES DISTRICT JUDGE